**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

Patricia W. Griffin
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19

Date Submitted:  February 21, 2022
Final Report:    February 28, 2022

Jeffrey M. Weiner, Esquire
Law Offices of Jeffrey M. Weiner, P.A.
1332 King Street
Wilmington, Delaware 19801

Robert Penza, Esquire
Polsinelli PC
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801

Peter K. Schaeffer, Jr., Esquire
Avenue Law
1073 South Governors Ave.
Dover, Delaware 19904

Mark M. Billion, Esquire
Billion Law
1073 South Governors Ave.
Dover, Delaware 19904

*Via U.S. Mail*
Patricia E. Gibbs
3431 S. DuPont Blvd.
Smyrna, Delaware 19977

*Via U.S. Mail*
Lewis H. Pritzkur
2405 Brookshire Drive
Wilmington, Delaware 19803

RE:  *Twin Willows, LLC v. Lewis Pritzkur, Trustee for Patricia E. Gibbs, Dawn R. Ellery, Gwen D. Rinaldi, Patricia E. Gibbs, and Robin Silverman*
C.A. No. 2020-0199-PWG

Dear Counsel and Parties:

Pending before me is a motion to compel the production of documents that have been withheld in the course of discovery on a claim of privilege. This matter has previously come before the Court on a question of lack of subject matter jurisdiction and several discovery disputes. The matter is scheduled for trial on March 23-24, 2022. For efficiency, I limit my discussion and the background related

to this matter to the immediate discovery dispute.[1]  The petitioner in this matter seeks the production of documents.  The respondent claims work-product privilege under Rule 26(b)(3) of the Court of Chancery Rules and the common interest privilege under Rule 502(b)(3) of the Delaware Rules of Evidence.  I discuss each in turn.

##      I.     Background[2]

In 2016, Respondent Lewis Pritzkur ("Pritzkur"), as partition trustee for Patricia E. Gibbs ("Gibbs"), Dawn R. Ellery, Gwen D. Rinaldi, and Robin Silverman (the "Lawrence Respondents"), entered into an agreement ("Agreement") to sell an approximately 81.90 acre farm ("Property") located at 3431 South Dupont Boulevard, Smyrna, Delaware, to JMW Investments, LLC.[3]  The Agreement was assigned to Plaintiff Twin Willows, LLC ("Twin Willows") on March 14, 2017.[4] For various reasons that will be litigated at trial, the Agreement was not fully performed.[5]  Twin Willows filed a complaint ("Complaint") on March 13, 2020 seeking specific performance of the Agreement and equitable relief.[6]  The Lawrence

---

[1] More detailed background information related to this matter can be found in the Final Master's Report dated July 27, 2021.  *See* Docket Item ("D.I.") 38, at 2-5.

[2] I refer to the transcript of the oral argument conducted on February 18, 2022 as "Tr."

[3] D.I. 1, ¶¶ 1, 3, 5-6.

[4] *Id.*, ¶ 19.

[5] *Id.*, ¶¶ 20-46.

[6] *Id.*  The Complaint asks the Court to declare that the parties have a current, valid, and binding Agreement, to extend the time to complete the contingencies in the Agreement by

Respondents answered on April 23, 2020.[7]  Pritzkur answered on April 23, 2020.[8]

On April 5, 2021, the Court questioned whether it had subject matter jurisdiction over the matter.[9]  In a July 27, 2021 Master's Report, the Court concluded that it has subject matter jurisdiction because Twin Willows posits a possible equitable remedy of specific performance, and stated that:

> To obtain specific performance, however, Twin Willows will have to prove Defendants' misconduct, that their actions prevented Twin Willows from performing under the contract, and that it could have performed under the Agreement on a timely basis if the alleged misconduct had not occurred.[10]

Following this, the parties engaged in robust discovery and also filed multiple discovery motions.[11]  The instant Motion to Compel ("Motion") arose following Pritzkur's deposition.  At his deposition, Pritzkur discussed his efforts to supervise the marketing and sale of the Property from the time that he was appointed as partition trustee.[12]  Among other things, Pritzkur discussed his interactions with the

---

18 months, to order Defendants to vacate the Property until the permitting process is complete, and for damages and attorneys' fees and costs. *Id.*, at 11.

[7] D.I. 5.

[8] D.I. 6.

[9] D.I. 29; D.I. 30.

[10] D.I. 38, at 12, *adopted*, D.I. 64.

[11] *See* D.I. 72; D.I. 86; D.I. 95; D.I. 99.

[12] *See generally* D.I. 99, Ex. A (hereinafter "Pritzkur Dep.").

Lawrence Respondents and their attorney.[13]  Following his deposition, Pritzkur supplemented his documentary productions in response to references he made about communications between himself and the Lawrence Respondents' attorney in the deposition.[14]  As part of this production, Pritzkur compiled two privilege logs – one on January 25, 2022,[15] and an additional log as a part of his response in opposition to the Motion on February 11, 2022.[16]

Twin Willows filed the Motion on February 3, 2022, arguing that the documents withheld on a claim of privilege are discoverable and not privileged, and any privilege was waived.[17]  On February 11, 2022, Pritzkur responded that the documents were privileged under either the work product privilege or common interest privilege, and there has been no waiver of the privilege.[18]  The Lawrence Respondents filed a joinder to Pritzkur's response on February 14, 2022.[19]  Each party seeks their fees and costs related to the Motion.[20]  I heard oral argument in this

---

[13] *E.g.* Pritzkur Dep. 76:21-77:5; *id*. 27:4-17.

[14] *See* D.I. 99, Ex. B.

[15] *See id*., Ex. D; D.I. 97.

[16] D.I. 106, Ex. FF.

[17] D.I. 99.

[18] D.I. 106.

[19] D.I. 107.

[20] *See* D.I. 99, at 10; D.I. 106, at 14; D.I. 107, at 5.

matter on February 18, 2022.[21] The documents for which Pritzkur claims privileged were delivered to the Court for *in camera* review on February 21, 2022, along with an updated privilege log. Discovery closed on February 3, 2022.[22]

## II. Analysis

### A. *Parties' Contentions*

Twin Willows argues that the communication between Pritzkur and the Lawrence Respondents' attorney is necessary to show that Twin Willows was denied its bargained-for contractual rights.[23] Twin Willows further contends that the documents are not privileged or, if they are privileged, the privilege was waived at Pritzkur's deposition.[24]

Pritzkur responds that the communications between himself and the Lawrence Respondents' attorney are protected either under the work product doctrine because litigation between them and Twin Willows was anticipated during the performance of the Agreement or under the common interest privilege because Pritzkur and the Lawrence Respondents had substantially similar interests related to the negotiation,

---

[21] D.I. 120.

[22] *See* D.I. 80.

[23] D.I. 99, at 5-7.

[24] *Id.*, at 8-9.

performance, and litigation of the Agreement.[25] Pritzkur also argues that the Court should limit any compelled production to documents related to access of the Property by Twin Willows.[26] Finally, Pritzkur contends that there was no intentional disclosure, or waiver, of any privileged communications in his deposition.[27]

The Lawrence Respondents join in Pritzkur's opposition and assert there is no basis for seeking this discovery, and that the common interest privilege protects communications between their attorney and Pritzkur "for the purpose of seeking, obtaining or delivering legal advice" on issues related to the sale of the Property pursuant to court order.[28]

## B. *Standard of Review*

Discovery is broad. "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[29] "The party claiming privilege has the burden of demonstrating" that privilege.[30]

---

[25] D.I. 106, at 13-14; *see also* Tr. 24:16-24.

[26] D.I. 106, at 3-9; *see also* Tr. 13:19-14:3; Tr. 16:23-18:9.

[27] D.I. 106, at 9-12; *see also* Tr. 23:2-12.

[28] Tr. 28:20-21; *see also* D.I. 107; Tr. 28:14-24; *id*. 29:9-24.

[29] Ct. Ch. R. 26(b)(1).

[30] *In re Lululemon Athletica Inc. 220 Litig.*, 2015 WL 1957196, at *9 (Del. Ch. Apr. 30, 2015).

Under Court of Chancery Rule 26(b)(3), materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" may be obtained in discovery "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's cases and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."[31]  This work product privilege "can apply to documents prepared by non-attorneys, if those documents were prepared in anticipation of litigation."[32]

In addition, Delaware recognizes the "common interest privilege" within the attorney-client privilege.  "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client … by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest."[33]  Under the common interest privilege, "a communication may still be classified as confidential even after its disclosure to others, as long as those

---

[31] Ct. Ch. R. 26(b)(3).

[32] *U.S. Bank Nat. Ass'n v. U.S. Timberlands Klamath Falls, LLC*, 2005 WL 5775760, at *3 (Del. Ch. Aug. 16, 2005).

[33] D.R.E. 502(b)(3).

others have interests that are 'so parallel and non-adverse that, at least with respect to the transaction involved, they may be regarded as acting as joint venturers.'"[34] Further, the common interest privilege requires a "disclosure … made to facilitate the rendition of legal services,"[35] so long as "the common interest invoked by the party asserting the privilege is sufficiently legal rather than commercial."[36] "[C]ommunications about a business deal, even when the parties are seeking to structure a deal so as to avoid the threat of litigation, will generally not be privileged under the common interest doctrine."[37]  "[A]pplication of the common interest privilege is appropriate where it is clear that the parties were collaborating and sharing information in furtherance of a joint *legal* strategy or objective, rather than seeking legal advice with regard to a commercial transaction."[38]

*C. Application of Privilege Generally*

---

[34] *Saito v. McKesson HBOC, Inc.*, 2002 WL 31657622, at *3 (Del. Ch. Nov. 13, 2002) (citation omitted).

[35] *In re Lululemon Athletica Inc. 220 Litig.*, 2015 WL 1957196, at *9 (internal quotation marks and citations omitted).

[36] *Titan Inv. Fund II, LP v. Freedom Mortg. Corp.*, 2011 WL 532011, at *4 (Del. Super. Feb. 2, 2011).

[37] *Glassman v. CrossFit, Inc.*, 2012 WL 4859125, at *4 (Del. Ch. Oct. 12, 2012).

[38] *Titan Inv. Fund II, LP*, 2011 WL 532011, at *4 (emphasis in original).

The Motion seeks production of "all communication between [Pritzkur] and [the Lawrence Respondent's attorney]."[39]  Specifically, the Motion points to the documents identified in Pritzkur's privilege log dated January 25, 2022.[40] Additionally, Pritzkur's response supplements the privilege log, and those documents are also considered for purposes of the Motion.[41]

I first consider whether the documents at issue are discoverable and find that they involve matters relevant to Twin Willows' claim and are discoverable.  Next, I address the other issues presented by the Motion – whether the documents for which privilege is claimed were prepared in anticipation of litigation and are protected by work-product privilege, and/or whether they are privileged communications shared in furtherance of a legal, and not primarily a commercial, common interest.

"Application of the work product doctrine turns in part on why the document was produced.  If a document was generated 'because of litigation,' then it is likely

---

[39] D.I. 99, at 1.

[40] *Id.*, Ex. D.  At oral argument, Twin Willows asked the Court to compel the production of all communications between Pritzkur and the Lawrence Respondents' attorney from 2016 until March 13, 2020. Tr. 35:24-36:18.  Based upon Pritzkur's counsel's representations at oral argument, I conclude that Pritzkur has already produced responsive, non-privileged documents. *See* Tr. 36:21-37:6.  Thus, the scope of the inquiry to resolve the Motion is limited to those documents contained in the complete privilege log for which privilege is claimed.  And, as discovery has closed and trial is fast approaching, I doubt that the Court will be able to address additional discovery disputes in this matter.

[41] D.I. 106, Ex. FF.

privileged.  If the document was created for some other reason, such as a business purpose, then it is likely not protected."[42]  While Pritzkur argues that "litigation was on the horizon here for a long time,"[43] the evidence presented does not show that litigation was anticipated throughout the life of the Agreement.  So, a more specific analysis, through an *in camera* review of the documents claimed as privileged, is necessary.

Additionally, I consider whether Pritzkur has met his burden of showing that the documents being withheld are protected under the common interest privilege.[44]

---

[42] *JPMorgan Chase & Co. v. Am. Century Cos.*, 2013 WL 1668393, at *3 (Del. Ch. Apr. 18, 2013) (citations omitted); *see also Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 778846, at *8 (Del. Ch. Feb. 24, 2015) ("The main question, then, is why were the Discovery Documents created? In Delaware, work product protection is not precluded merely because the [document] may also serve a business function.  Although dual purpose documents may receive work product protection, a document still must have been created 'because of' the litigation.") (cleaned up).  Here, Pritzkur is a licensed Delaware attorney, but he was representing his own interests as the appointed partition trustee in the negotiation and performance of the Agreement and in the partition action in this Court. *See Pritzkur v. Ellery*, C.A. No. 12820 (Del. Ch.).  While I did not find any Delaware caselaw addressing whether Rule 26(b)(3) applies to a *pro se* litigant, the rule broadly permits the protection of materials "prepared in anticipation of litigation … *by* or for another party." Ct. Ch. R. 26(b)(3) (emphasis added).  And, other jurisdictions have recognized that a *pro se* litigant may invoke the protections of the work product doctrine. *See Halbach v. Boyman*, 872 A.2d 120, 124 (N.J. Super. Ct. App. Div. 2005).

[43] Tr. 24:18.

[44] At oral argument, Twin Willows raised as a threshold matter for this privilege whether Pritzkur, as an unrepresented party at the time and thus not a "client," was a person who could claim the common interest privilege under the rule. Tr. 9:3-14.  "Client" is defined as "a person … who is rendered professional legal services by a lawyer, or who consults with a lawyer with a view to obtaining professional legal services from the lawyer." D.R.E. 502(a)(1).  Here, Pritzkur was not a client of the Lawrence Respondents' attorney, and during the relevant period, Pritzkur was not represented by counsel.  Although my research

To invoke the common interest privilege, the parties sharing communications must have "substantially similar" legal interests.[45] While at oral argument Twin Willows argued that the common interest privilege would not apply because the interests of Pritzkur and the Lawrence Respondents may diverge in certain circumstances,[46] I conclude that, based upon their conduct throughout this litigation, Pritzkur and the Lawrence Respondents have a substantially similar interest sufficient to invoke the common interest privilege. Their positions in this litigation have been almost identical,[47] and they were united in the desire to sell the Property in compliance with this Court's order.

---

did not reveal any Delaware caselaw directly addressing the issue of whether an unrepresented party may claim the common interest privilege for communications with another party's attorney, other jurisdictions have found that a *pro se* party may claim the common interest privilege, if all of its other requirements are met. *See In re Sanctuary Belize Litig.*, 2019 WL 6717771, at *2 (D. Md. Dec. 10, 2019) (quoting *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990)). I find that Pritzkur can seek to invoke the common interest privilege in this instance.

[45] *Titan Inv. Fund II, LP v. Freedom Mortg. Corp.*, 2011 WL 532011, at *4 (Del. Super. Feb. 2, 2011) (internal quotation marks and citations omitted). *See also In re Lululemon Athletica Inc. 220 Litig.*, 2015 WL 1957196, at *9 (Del. Ch. Apr. 30, 2015) (recognizing common interest privilege protection in a transactional context where two parties sought legal advice on a common compliance strategy for federal securities regulation and where securities litigation was anticipated); *Glassman v. CrossFit, Inc.*, 2012 WL 4859125, at *4 (Del. Ch. Oct. 12, 2012).

[46] Tr. 9:15-24.

[47] *Compare*, *e.g.*, D.I. 5 (Pritzkur's answer) *with* D.I. 6 (Lawrence Respondents' answer); D.I. 106 (Pritzkur's opposition to the Motion) *with* D.I. 107 (Lawrence Respondents' joinder to Pritzkur's opposition to the Motion).

A more complex question is whether the interest that Pritzkur and the Lawrence Respondents shared was a legal interest or a commercial or transactional interest. Delaware courts have not found that a common interest privilege applies where the parties primarily shared legal advice on issues about a transaction.[48] "Communications about a business deal, even where the parties are seeking to structure a deal so as to avoid the threat of litigation, will generally not be privileged under the common-interest doctrine."[49] For example, in *Glassman v. CrossFit, Inc.* (hereinafter "*Glassman*"), communications between a co-founder and a private equity fund and their respective attorneys on the structure and announcement of a commercial transaction were held to be primarily commercial and not legal.[50] Similarly, in *Titan Investment Fund II, LP v. Freedom Mortgage Corporation* (hereinafter "*Titan Investment Fund II*"), the Superior Court held that receiving legal advice on the structure of a transaction to achieve common commercial goals was insufficient to invoke the common interest privilege.[51] In both cases, the courts held

---

[48] *See Glassman*, 2012 WL 4859125, at *3; *Titan Inv. Fund II, LP*, 2011 WL 532011, at *4.

[49] *Glassman*, 2012 WL 4859125, at *4.

[50] *Id.*, at *3-4.

[51] *Titan Inv. Fund II, LP*, 2011 WL 532011, at *5.

that the common interest privilege applies where parties are sharing communications "in furtherance of a joint *legal* strategy or objective."[52]

Here, Pritzkur and the Lawrence Respondents were involved in the negotiation and performance of the Agreement from 2016 until the Complaint was filed on March 13, 2020.[53] At first glance, discussions related to the negotiation and performance of the Agreement—a business deal—would not appear to fall within the scope of the common interest doctrine because they would primarily related to an economic, rather than a legal, interest.[54] But, during that time, Pritzkur, as partition trustee, was reporting regularly to this Court as part of the partition matter.[55] And, Pritzkur argues that his communications with the Lawrence Respondents' attorney reflect discussions of legal strategy in anticipation of litigation.[56] However, the privilege logs themselves do not provide sufficient evidence whether privilege applies to these documents or communications. To accurately resolve Pritzkur's privilege claims, I requested *in camera* review of the documents being withheld.[57]

---

[52] *Id.*, at *4 (emphasis in original); *see also Glassman*, 2012 WL 4859125, at *4.

[53] *See generally* D.I. 1, ¶¶ 20-46.

[54] *See Glassman*, 2012 WL 4859125, at *4.

[55] *See Pritzkur v. Ellery*, C.A. No. 12820 (Del. Ch.).

[56] Tr. 24:20-24.

[57] There were documents included in the privilege logs that I find do not need to be produced because they are not discoverable and nonresponsive to the Motion's request for communications between Pritzkur and the Lawrence Respondents' attorney (i.e.,

## D. *In Camera Review*

Following *in camera* review, I address the specific privilege claims, describing the documents and their contents in general terms, below.

### 1. Discussions of the Performance or Negotiation of the Agreement are not Privileged

One category of documents contains discussions about the Agreement, its negotiation, and its performance.[58]  In general terms, those communications are mostly discussions about Twin Willows' performance under the Agreement and Pritzkur's and the Lawrence Respondents' negotiation strategy for extensions to the Agreement.  I find these communications are not protected by the common interest privilege since their primary concern was a common commercial objective – the completion of the Agreement to sell the Property.  These documents reflect that the parties were discussing the performance of their duties under the Agreement in good

---

communications not between Pritzkur and the Lawrence Respondents' attorney). *See* D.I. 99, at 1.  Those documents are described in the privilege logs as: 10/27/17, Contact Ellery; 4/25/18, JG to LP; 6/4/18, JG to LP; 8/7/18, JG to LP; 9/5/18, JG to LP; 9/12/18, JG to LP; 10/24/18, JG to LP; 1/22/19, NB to DE; 2/5/19, DE to LP; 2/8/19, JG to LP; 8/13/19, DE to LP; 8/13/19, RP to DE/LP; 8/13/19, RP to DE/LP; 8/13/19, LP to DE/RP; 9/11/19, P. Invoice.

[58] Specifically, these documents are described in the privilege logs as: 5/15/17, RP to LP; 8/2/17, RP to LP; 9/19/17, LP to RP; 5/3/18, LP to RP; 5/8/18, RP to LP; 5/15/18, LP to RP; 8/6/18, LP to RP; 9/11/18, LP to RP; 10/30/18, LP to RP; 2/24/19, LP to JL/RP; 3/13/19, LP to RP; 1/16/20, LP to RP; 01/31/18, 8:06 P.M., LP to RP (this document was included twice on the privilege log); 05/11/18, 3:16 P.M., LP to RP; 08/03/18, 10:54 A.M., LP to RP; 01/08/19, 10:34 A.M., LP to RP; 01/13/20, 8:47 A.M., LP to RP; 02/09/20, 9:51 A.M., LP to RP, Request comment on draft email to CM); 02/12/20, 9:03 A.M., LP to RP.

faith and, to the extent that these disclosures were "made in furtherance of professional legal services" related to the parties' obligations under the Agreement, they are similar in kind to the communications in *Titan Investment Fund II* and *Glassman* which were determined not to be protected by the common interest privilege because they relate only to the business deal and not to a joint legal strategy.[59] These documents, even documents dated early 2020, do not discuss any threat of being sued by Twin Willows. Therefore, I conclude that these documents are primarily in furtherance of a common commercial interest, and not protected by the common interest privilege.

Similarly, I find these documents are not protected by the work product doctrine because they were not prepared in anticipation of litigation or "because of litigation."[60] Nothing in the documents suggests that litigation was imminent and, even in early 2020, the parties were attempting to negotiate an extension. Since these documents do not reflect an anticipated or threatened litigation, the work product doctrine does not apply.

---

[59] D.R.E. 502(a)(2); *see Titan Inv. Fund II, LP v. Freedom Morg. Corp.*, 2011 WL 532011, at *4 (Del. Super. Feb. 2, 2011). *See also Glassman*, 2012 WL 4859125, at *4. A handful of documents in this category are not "disclosure[s ] made in furtherance of the rendition of professional legal services." D.R.E. 502(a)(2). For example, one document has as its only sentence of text: "Please send the Agreement of Sale." Thus, privilege does not apply because it is not a "disclosure."

[60] *See JPMorgan Chase & Co. v. Am. Century Cos., Inc.*, 2013 WL 1668393, at *3 (Del. Ch. Apr. 18, 2013).

2. <u>Discussions of Ancillary Property Rights are Privileged</u>

Another category of documents contains discussions about the property rights that the co-tenants possessed.[61] In these documents, the Lawrence Respondents or their attorney made certain disclosures to Pritzkur so that ancillary property rights issues, such as utility easements, could be resolved. These communications were "made in the furtherance of the rendition of professional legal services," and of a common interest – the administration and partition of the Property.[62] The resolution of property rights involves a legal issue and legal strategy that is separate from the commercial interest.[63] Thus, I find these documents are protected by the common interest privilege. In contrast, however, these documents are not protected by the work product doctrine – they were not created "because of litigation" and there is no evidence that litigation was anticipated or threatened related to these ancillary property rights.[64]

3. <u>Documents Related to Legal Strategy in the Partition Matter are Privileged</u>

---

[61] Specifically, these documents are described in the privilege logs as: 2/26/18, RP to DE; 2/26/18, DE to RP.

[62] D.R.E. 502(a)(2).

[63] *See In re Lululemon Athletica Inc. 220 Litig.*, 2015 WL 1957196, at *9 (Del. Ch. Apr. 30, 2015).

[64] *See generally JPMorgan Chase*, 2013 WL 1668393, at *3.

Another category of documents contains discussions about strategy in the related partition matter, *Pritzkur v. Ellery*.[65]  Although in the partition matter the Lawrence Respondents are nominally named as respondents and Pritzkur as petitioner, Pritzkur and the Lawrence Respondents have a common legal interest in that matter to complete the partition sale of the Property in compliance with this Court's orders.[66]  The partition matter has been running concurrently with the performance and litigation of the Agreement, with Pritzkur and the Lawrence Respondents pursuing a common legal strategy related to the partition matter.  Thus, communications discussing the Lawrence Respondents' and Pritzkur's joint legal strategy in the partition matter are protected by the common interest privilege.  Alternatively, because these documents were created "because of litigation", the work product doctrine applies to these documents to protect them from disclosure.[67]

---

[65] C.A. No. 12820-MG (Del. Ch.).  Specifically, these documents are described in the privilege logs as: 5/4/18, LP to RP; 6/5/18 RP to LP; 6/5/18 LP to RP; 6/6/18, LP to RP; 8/27/18, LP to RP; 9/17/18, LP To RP; 2/11/19, LP to RP; 2/12/19, LP to RP; 1/31/20, LP to RP; 1/31/20, LP to RP; 1/31/20, RP to LP; 07/30/18, 8:23 P.M., LP to RP; 07/30/18, 9:27 P.M., LP to RP; 01/06/20, 10:07 A.M., LP to RP; 02/09/20, 9:51 A.M., LP to RP.

[66] In the original partition matter involving the Property, Pritzkur was appointed by the court as the partition trustee to sell the Property. *See Ellery v. Gibbs*, C.M. No. 2521-K (Del. Ch.).  When Pritzkur sought court approval of the Agreement, he filed a new Civil Action naming the Lawrence Respondents and Patricia Gibbs as respondents. *See Pritzkur v. Ellery*, C.A. No. 12820-MG (Del. Ch.).  Regardless, the legal interests of Pritzkur, as partition trustee, and the Lawrence Respondents, as co-tenants, are aligned related to the partition sale of the Property.

[67] *See generally JPMorgan Chase*, 2013 WL 1668393, at *3.

4. <u>Dual Purpose Documents will be Redacted</u>

Finally, in a few documents, Pritzkur and the Lawrence Respondents' attorney discussed both the commercial objective (the performance and negotiation of the Agreement) and the legal strategy related to the partition matter.[68]  For the reasons discussed above, communications addressing their commercial interest are not protected by the common interest privilege or the work product doctrine, but communications addressing legal strategy in the partition matter are protected under both the common interest privilege and the work product doctrine.  Since these documents have dual purposes, these documents shall be produced with the privileged information (i.e., discussions about the partition matter and court interactions related to that matter) redacted.[69]

*E.  Pritzkur did not Waive Privilege*

---

[68] Specifically, those documents are described in the privilege logs as: 08/08/17, LP to RP; 3/15/19, LP to RP; 1/16/20, LP to RP.

[69] Two additional documents will be produced with redactions.  First, in an email from Pritzkur to Penza dated August 8, 2017 at 6:29 p.m., Pritzkur appears to discuss scheduling of an unrelated court matter. Because this discussion does not appear to be relevant to this action, and to protect whatever privilege of non-parties may exist in this communication, Pritzkur shall produce this document with the irrelevant material redacted.  Second, a letter and attachment from Pritzkur dated March 15, 2019 shall be produced with confidential, personal identifying information redacted.  In addition, I note that since neither of these documents was prepared "because of litigation" and do not reflect anticipated litigation, the work product doctrine does not protect them from disclosure.

Twin Willows argues that Pritzkur waived any privilege when he testified to the contents of his communications with the Lawrence Respondents' attorney.[70]  I disagree.  "A person waives a privilege conferred by these rules or work-product protection if such person … intentionally discloses or consents to disclosure of any significant part of the privileged or protected communication or information."[71]  "A disclosure does not operate as a waiver if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error …"[72]  "Court-ordered waiver, however, has been characterized as a harsh result typically only justified in cases of the most egregious conduct by the party claiming the privilege."[73]  "Where defendants have adequately demonstrated the privilege, plaintiffs have the burden of showing good cause to pierce the privilege."[74]

---

[70] D.I. 99, at 9.

[71] D.R.E. 510(a).

[72] D.R.E. 510(c). *See also In re Kent County Adequate Public Facilities Ordinances Litigation*, 2008 WL 1851790, at *3 (Del. Ch. Apr. 19, 2008).

[73] *TCV VI, L.P. v. TradingScreen Inc.*, 2015 WL 5674874, at *8 (Del. Ch. Sept. 25, 2015) (cleaned up); *see also Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 2008 WL 498294, at *3 (Del. Super. Jan. 14, 2008) ("Since finding a waiver can produce harsh results, Delaware Courts will only find a waiver of the attorney-client privilege in rare instances."); *Saito v. McKesson HBOC, Inc.*, 2002 WL 31657622, at *3 (Del. Ch. Nov. 13, 2002) ("waivers [of work product privilege] are rarely granted in Delaware because of their harsh result").

[74] *E.I. Du Pont De Nemours & Co. v. Medtronic Vascular, Inc.*, 2012 WL 1408815, at *4 (Del. Super. Mar. 13, 2012) (citations omitted); *see also Connolly v. Labowitz*, 1986 WL

Having reviewed the privileged material and the entirety of Pritzkur's deposition, the evidence does not show that Pritzkur disclosed the contents of any significant part of the privileged communications.[75]  Therefore, I find that Twin Willows has failed to meet its burden of proving waiver of the privilege.

*F.  Attorneys' Fees*

All parties have sought their attorneys' fees related to the Motion.[76]  Where, as here, a motion to compel "is granted in part and denied in part," Court of Chancery Rule 37(a)(4) provides that "the Court … may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner."[77]  "Rule 37(a)(4) only allows for the shifting of fees in favor of a successful party—either a movant or opposing party— when its adversary's position was not substantially justified…. [It] merely authorizes

---

399, at *1 (Del. Super. Sept. 24, 1986) ("The party seeking records … has the burden of proving waiver of the privilege as to the record.").

[75] In the deposition, Prtizkur testified that he "was constantly emailing [the Lawrence Respondent's attorney] in – in reference to the barred access issue." Pritzkur Dep. 198:2-4.  Pritzkur appears to be referring to emails that I have held are not privileged.  To the extent that Twin Willows argues that this is a disclosure of other, privileged communications, it is not.  This is a vague reference, not a "significant part of the privileged or protected communication or information." D.R.E. 510(a).  And, this fleeting reference, immediately qualified by the statement "[e]xcuse me, I'm not certain [we produced those emails]," is inadvertent. D.R.E. 510(c).

[76] *See* D.I. 99, at 10; D.I. 106, at 14; D.I. 107, at 5.

[77] Ct. Ch. R. 37(a)(4)(C).

the court to apportion the fee award "in a just manner" where, as here, the success of the party seeking fees is partial."[78]

In this case, although I ultimately conclude that not all documents were privileged, Pritzkur had a legitimate claim of privilege, and each party's arguments on their positions were substantially justified. In light of the result and the good faith arguments advanced by all parties, I find that the just manner to apportion the expenses related to this motion is that each party bear their own costs related to the Motion.

### III.    Conclusion

For the reasons set forth above, I recommend that Twin Willows' Motion to Compel be granted in part and denied in part. After *in camera* review of the documents being withheld by Pritzkur, I conclude that certain of the documents, or portions of the documents, are protected by work-product and/or common interest privilege, or are nonresponsive to the Motion to Compel, and do not need to be produced, while others are not privileged and need to be produced. Production of specific documents as described in the privilege logs is discussed in detail above.

---

[78] *Tavistock Civic Ass'n, Inc. v. Owen*, 223 A.3d 436, 2019 WL 6487282, at *2 (Del. 2019) (TABLE).

This is a final master's report under Court of Chancery Rule 144, and in the interest

of justice and judicial economy given the upcoming trial, exceptions are stayed.

Sincerely,

*/s/ Patricia W. Griffin*

Patricia W. Griffin
Master in Chancery